**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No. 1:26-cv-3586

ALAN P. MULLEN,

Plaintiff,

v.

TELLER COUNTY SHERIFF'S OFFICE;
DIVIDE FIRE PROTECTION DISTRICT;
JASON MIKESELL, Teller County Sheriff, in his official capacity;
CHRIS HINKLE, Divide Interim Fire Chief, in his official capacity;
RYAN GATES, Former Teller County Sheriff's Office Deputy, in his individual capacity;
JOHN DOE 1, Divide Fire Protection District Official, in their individual capacity;
JOHN DOE 2, Divide Fire Protection District Official, in their individual capacity;
JOHN DOE 3, Divide Fire Protection District Official, in their individual capacity;

Defendants.

---

## COMPLAINT AND JURY DEMAND

Plaintiff Alan Mullen, by and through his counsel, Adam Frank and William Fairhurst of the Frank Law Office LLC, respectfully alleges for his Complaint and Jury Demand:

## INTRODUCTION

1. "At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable government intrusion." *Kyllo v. United States*, 553 U.S. 27, 31 (2001). This case concerns a violation of this bedrock principle of American law.

2. On July 27, 2025, Alan Mullen was clearing some aspen trees and attending a small campfire on his property, when Former Teller County Sheriff's Office Deputy Ryan Gates as well as fire officials from the Divide Fire Protection District trespassed onto his property and violently and

unlawfully assaulted and arrested him, leaving him with lasting injuries and facing unwarranted criminal charges.

3. Defendant Gates and the John Doe Defendants did this because they wrongly believed that the Teller County fire restrictions in effect at that time banned fires of any kind, when they very clearly did not.

4. When Mr. Mullen tried to explain to the individual Defendants that his small, contained fire complied with local law, they ignored him and violently escalated the encounter.

5. This incident was the direct result of deficient training by the Teller County Sheriff's Office and Divide Fire Protection Districts, which created, instituted, and perpetuated a fire restriction policy that their own deputies and officials did not understand, in part because of insufficient training.

6. Mr. Mullen brings this case to secure justice against Defendants Gates and John Does for violating his constitutional rights and against the Teller County Sheriff's Office and Divide Fire Protection District for instituting the deficient policies and practices and the insufficient training that caused them to do it.

## JURISDICTION & VENUE

7. This is a civil rights action for monetary damages, declaratory relief, and injunctive relief, brought pursuant to 42 U.S.C. § 1983 and C.R.S. § 13-21-121. This Court possesses subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 2201-02. Mr. Mullen seeks attorney fees and costs under 42 U.S.C. § 1988 and C.R.S. § 13-21-121(3).

8. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All the events alleged herein occurred in the State of Colorado, and all the parties were residents of and domiciled in the State at the time of the events giving rise to this Complaint.

## PARTIES

9. At all times relevant to this Complaint, Alan Mullen was a citizen and resident of Teller County and the State of Colorado.

10. Defendant Teller County Sheriff's Office ("TCSO") is a governmental entity organized under the laws of the State of Colorado. Defendant TCSO enforces local and state law in Teller County. At all times relevant to this Complaint, TCSO employed and was responsible for the oversight, supervision, discipline, and training of TCSO personnel, including Defendant Gates, as well as for establishing the policies and practices of TCSO and training its employees on those policies and practices.

11. Defendant Divide Fire Protection District ("DFPD") is a governmental entity organized under the laws of the State of Colorado. DFPD is responsible for providing fire suppression, emergency medical, and rescue services within the one hundred square miles of area in north central Teller County, Colorado. At all times relevant to this Complaint, DFPD employed and was responsible for the oversight, supervision, discipline, and training of DFPD personnel, including Defendant Does, as well as for establishing the policies and practices of DFPD and training its employees on those policies and practices.

12. Defendant Jason Mikesell, in his official capacity, is the Sheriff of Teller County. The Sheriff is the head of the TCSO. The Sheriff is responsible for the oversight, supervision, discipline, and training of TCSO personnel, including Defendant Gates, as well as for establishing the policies and practices of the TCSO and training TCSO employees on those policies and practices. Sued in his official capacity, the Sheriff is a representative of Teller County, and a lawsuit brought against the Teller County Sheriff in his official capacity is a lawsuit against Teller County.

13. Defendant Chris Hinkle, in his official capacity, is the Interim Fire Chief of the Divide

Fire Protection District ("DFPD"). The Fire Chief is responsible for the oversight, supervision, discipline, and training of DFPD personnel, including the Defendant fire officials, as well as for establishing the policies and practices of the DFPD and training DFPD employees on those policies and practices. Sued in his official capacity, the Fire Chief is a representative of the DFPD and Teller County, and a lawsuit brought against the Interim Fire Chief in his official capacity is a lawsuit against the DFPD.

14. Defendants TCSO, DFPD, Mikesell, and Hinkle are sometimes hereinafter referred to as the "Local Government Defendants."

15. Defendant Former Deputy Ryan Gates was a peace officer acting within the scope of his official duties and employment and under color of state law in his capacity as a TCSO deputy. At all relevant times, Defendant Gates was a citizen and resident of the State of Colorado.

16. At all relevant times, Defendants John Doe 1-3 were residents of Colorado acting within the scope of their official duties and under color of state law in their capacity as DFPF officials. At all relevant times, Defendants Doe 1-3 were fire officials employed by DFPD and Teller County.

## FACTUAL ALLEGATIONS

17. Mr. Mullen has lived in Divide, Colorado at his property on Ridge Road where this incident occurred for over 27 years.

18. Mr. Mullen is a retired U.S. Army Special Forces Master Sergeant with over 22 years of activity duty service.

19. During those years of decorated service, Mr. Mullen specialized in counterterrorism and counterintelligence operations with deployments in Bosnia and Iraq. He also led law enforcement trainings in Greece for its national police.

20. In Colorado, Mr. Mullen has volunteered his expertise in special forces operations to train local law enforcement, including the Woodland Park SWAT team.

21. Mr. Mullen has similarly assisted in trainings with the U.S. Secret Service and U.S. Marshals Service.

22. Mr. Mullen has demonstrated throughout his entire working life his steadfast commitment to keeping his community and his country safe and secure.

23. On July 27, 2025, Mr. Mullen was clearing some aspen trees on his property.

24. Mr. Mullen has a wood burning stove inside his home, and so it was customary for him to collect spare wood for heating throughout the year.

25. On this occasion, Mr. Mullen collected a small portion of the aspen logs that he didn't expect to use for heating and burned them in a small metal burn barrel.

26. The barrel was less than three feet in diameter, and the fuel height and fire contained within the barrel was less than two feet in height.

27. At no point did Mr. Mullen burn slash piles.

28. According to Teller County fire regulations in place on the date of the incident, Mr. Mullen's fire did not require an open burn permit.

**Teller County was under its lowest fire restrictions when Deputy Gates arrested Mr. Mullen**

29. On the day of Mr. Mullen's unlawful arrest and detention, Teller County was under an Orange Flag fire restriction pursuant to local Ordinance 17.

30. Orange Flag is Teller County's lowest level of fire restrictions.

31. The Local Government Defendants are responsible for administering and enforcing the provisions of Local Ordinance 17.

32. The TSCO also serves as the Fire Warden of Teller County pursuant to C.R.S. § 30-10-512.

33. The Local Government Defendants put the Orange Flag restriction in place on June 2, 2025, continuing into the future.

34. The Teller County Sheriff's Office issued a public notice of the Orange Flag restrictions the same day:




*Teller County Sheriff's Office Facebook Post from 6/2/2025*

35. Under the Orange Flag restriction in place on the date of the incident, outdoor fires were "allowed with caution."



*Teller County Sheriff's Office Fire Ban Guide*

36. According to the fire restrictions in place on July 27, 2025, including Teller County Ordinance 17 as amended, the burning of natural untreated wood with a total full area of less than three feet in diameter and less than two feet in height did not require a burn permit and was allowed.

37. Defendant Gates was aware of the Orange Flag restriction in place on that day.

**<u>Deputy Gates did not understand the fire restrictions that were in place</u>**

38. However, due to the Local Government Defendants' failure to train Defendant Gates and the Doe Defendants on the meaning of an Orange Flag restriction, Gates and the Doe Defendants were not aware of what substantive fire restrictions were in place during an Orange Flag restriction.

39. The Local Government Defendants' failure to train their employees on what an Orange Flag restriction meant caused Defendant Gates and the Doe Defendants to have an incorrect understanding of what substantive fire restrictions were in place during an Orange Flag restriction.

40. Due to the Local Government Defendants' failure to train Defendant Gates and the Doe Defendants on the substantive fire restrictions that are in place during an Orange Flag restriction,

Defendant Gates and the Doe Defendants incorrectly and unreasonably believed that Mr. Mullen was in violation of the restrictions in place during an Orange Flag restriction.

41. The Local Government Defendants' failure to train Defendant Gates and the Doe Defendants thus caused Defendant Gates and the Doe Defendants to violate Mr. Mullen's constitutional rights.

**TCSO and Sheriff Mikesell knew that TCSO deputies lacked sufficient training on local fire restriction regulations**

42. Prior to the date of the incident, the Local Government Defendants knew that their employees were deficiently trained on local fire restriction regulations.

43. In 2025, The Local Government Defendants had not trained their employees who would be charged with enforcing local fire restrictions on what those local fire restrictions substantively meant prior to the incident with Mr. Mullen.

44. Further, at no point during Defendant Gates' employment with TCSO did any of the Local Government Defendants provide him with adequate training concerning what the various fire restriction levels the County used meant, including but not limited to an Orange Flag restriction.

45. This is evidenced in part by the fact that three days after Mr. Mullen's arrest, at a public meeting with an agenda that had already been set at the time of the violation of Mr. Mullen's constitutional rights, and with Sheriff Mikesell present, Commander Kevin Tedesco of the Teller County Sheriff's Office stated that there was confusion within local law enforcement over what an Orange Flag designation meant.

46. To address the Local Government Defendants' training deficiency, still with Sheriff Mikesell present, Commander Tedesco advised that law enforcement needed to clarify to its

employees that only slash burning under permit, and not slash burning in general, is impacted during and Orange Flag restriction.

47. At the public meeting, Commander Tedesco also emphasized that campfires are not restricted during an Orange Flag restriction, as this had been misunderstood.

**<u>On July 27, 2025, the fire on Mr. Mullen's property complied with the local fire restrictions</u>**

48. On July 27, 2025, Mr. Mullen burned wood on his home property in compliance with all laws, regulations, and restrictions, and ordinances in place on that day.

49. Mr. Mullen did not burn any materials in open slash piles, and the total fuel area of his fire never exceeded the parameters described in paragraph 36, above.

50. Mr. Mullen did not violate the restrictions in place during an Orange Flag restriction.

51. The small fire on Mr. Mullen's property was fully contained within a 55-gallon burn barrel, and Mr. Mullen was monitoring it from nearby.

52. Mr. Mullen had cleared all vegetation and combustible material around the barrel. This was plainly visible to Defendant Gates, as seen on his Body-Worn Camera (BWC):






53. The burn barrel also had a spark screen secured to its top. This is plainly visible in photos of the burn barrel taken by Mr. Mullen after he was released from custody.





54. Mr. Mullen had a water hose in his adjacent home and two fire extinguishers in a nearby Tuff box.

55. Under TCSO's Open Burning Permit Regulations, the total size of the barrel and the fire contained within it were below the threshold at which a burn permit would have been required.

56. The below is the relevant excerpt from Teller County's fire regulations:

**WHEN IS A PERMIT NOT REQUIRED FOR OPEN BURNING?**

- Burning of materials contained in an outdoor fireplace, barbecue grill, or pit and with a total fuel area of 3 feet (914mm) or less in diameter and 2 feet (610mm) or less in height used for pleasure, religious, ceremonial, cooking or similar purposes.
- Small campfires <u>within permanent fire pits or fire grates</u> located on developed picnic grounds, camp grounds, public and private lands within the county.
- Firing of model rockets, welding or operating acetylene or other torches with an open flame.

57. Mr. Mullen was fastidious in his approach to ensuring that the fire on his property remained safe and in compliance with local law. This reason for this is simple. As someone with over two decades of military experience, Mr. Mullen knew how to carefully follow rules and regulations.

He knew the Teller County fire restrictions well. He also knew the danger that can come from an unattended, out of control fire during dry conditions, and he took several steps, including having a nearby water source and fire extinguishers, to ensure that his fire was burning safely within the bounds of the then fire restrictions.

**<u>Despite observing that Mr. Mullen was following the law, Defendant Gates unlawfully assaulted and arrested Mr. Mullen</u>**

58. On Sunday July 27, 2025, despite Mr. Mullen taking numerous fire safety measures and being fully in compliance with local fire restrictions, and while he was enjoying a sunny day outside on his own property, he was suddenly and violently arrested by Defendant Gates.

59. At approximately 6:30 p.m. that day, Defendant Gates was dispatched to Mr. Mullen's property outside of Divide, Colorado because of reported smoke having been observed by neighbors.

60. Defendant Gates arrived at the area emitting the smoke observed by the 911 callers by approaching Mr. Mullen's property from the rear through a neighboring property and not via the main entrance or public access from the front.

61. Defendant Gates entered Mr. Mullen's property despite the fact that Mr. Mullen's fully legal burn barrel was clearly visible without entering his property.



*Photo of Mr. Mullen's Barrel Taken from Neighboring Property*

62. When Defendant Gates entered Mr. Mullen's property, he did not activate his BWC as required by C.R.S. § 24-31-902 and TCSO policy. Instead, Defendant Gates waited until well after he encountered Mr. Mullen to turn on his camera.

63. Defendant Gates turned on his BWC just moments before he unlawfully assaulted and arrested Mr. Mullen, while already in the middle of a confrontation with Mr. Mullen.

64. According to the dispatch log, four minutes elapsed between when Defendant Gates observed the burn barrel and when he arrested Mr. Mullen:

***[7/27/2025 5:50:23 PM]*** *[RR] TB21 found a burn barrel will be in contact with the neighbors [Shared]*

***[7/27/2025 5:54:31 PM]*** *[RR] TB21 PARTY FIGHTING [Shared]*

*CAD LOG 25-01600, p. 2.*

65. During that four-minute period, as outlined in his Affidavit of Probable Cause, Defendant Gates first encountered Mr. Mullen and spoke with him about the fire.

66. Mr. Mullen was inside his shed when he first observed Defendant Gates and the Doe Defendants from DFPD on his property.

67. Mr. Mullen exited the shed asked Defendant Gates, "Can I help you?"

68. Defendant Gates identified himself and said he was there about the fire. Defendant Gates asked Mr. Mullen if he knew what the burn ban status was.

69. Defendant Gates did not activate his BWC, despite the fact that he was interacting with a member of the public whom he believed – wrongly – was violating the law.

70. Midway through his interaction with Mr. Mullen, Defendant Gates finally activated his BWC and demanded identification from Mr. Mullen.

71. Mr. Mullen lawfully refused to provide identification. Mr. Mullen was on his own property and there did not exist reasonable suspicion that a crime had occurred such that he could be required to present ID.

72. Defendant Gates was not permitted under Colorado law to arrest Mr. Mullen based solely on a failure to present identification.

73. However, Mr. Mullen's assertion of his rights agitated Defendant Gates.

74. Defendant Gates said he was arresting Mr. Mullen "for failure to ID."

75. Defendant Gates then assaulted Mr. Mullen and unlawfully arrested Mr. Mullen.

76. Defendant Gates violently wrestled Mr. Mullen to the ground mere moments after announcing that Mr. Mullen was under arrest.




*Stills from Gates's BWC Video*

**<u>DFPD employees facilitated and participated in Mr. Mullen's unlawful arrest</u>**

77. The Doe Defendants of DFPD facilitated and participated in Mr. Mullen's arrest.

78. As can be seen in Defendant Gates's BWC footage, the Doe Defendants helped Defendant Gates handcuff Mr. Mullen, and they helped escort him away from his property.

79. The Doe Defendants did this even though Mr. Mullen was clearly in compliance with all fire restrictions in effect at the time.

80. According to his Affidavit of Probable Cause, Defendant Gates advised Mr. Mullen of a burn ban prior to arresting him.

81. At no point did any member of DFPD explain to Defendant Gates that his statements and beliefs about the legality of Mr. Mullen's activities were wrong.

**Deputy Gates used excessive force on Mr. Mullen, resulting in significant physical injuries**

82. During his assault and unlawful arrest on Mr. Mullen, Defendant Gates used excessive force and caused significant injuries to Mr. Mullen's lower spine and shoulder.

83. Immediately the assault, Mr. Mullen had scrapes and bruises on his torso and arm. He also suffered significant pain.

84. Soon after the assault, Mr. Mullen sought medical care for the severe lower back and shoulder pain the assault caused. The pain started immediately when Defendant Gates pinned Mr. Mullen to the ground and torqued Mr. Mullen's arm behind his back to cuff him. The lower back pain radiated into Mr. Mullen's legs as well.

85. Despite attempts to resolve these symptoms with conservative treatment, Mr. Mullen's symptoms have only worsened over time. In December 2025, Mr. Mullen returned to his doctors due to continued severe pain and worsening numbness in his lower extremities caused by the assault. These worsening symptoms limited and continue to limit Mr. Mullen's daily activities.

86. Mr. Mullen's symptoms remain unresolved and have continued to worsen. They will likely require additional medical treatment, potentially including surgery.

## CLAIMS FOR RELIEF

### First Cause of Action
**Unconstitutional Entry in Violation of Article II, Section 7 of the Colorado Constitution brought under C.R.S. § 13-21-131 Against Defendant Gates;**
**Unconstitutional Entry in Violation of the Fourth Amendment of the U.S. Constitution brought under 42 U.S.C. § 1983 against the Doe Defendants**

87. Mr. Mullen incorporates all other paragraphs of this Complaint herein.

88. Defendants did not have a warrant or other lawful justification for their entry onto Mr. Mullen's home property. Mr. Mullen did not consent to Defendants' entry onto his home property.

89. Defendants' warrantless entry into Mr. Mullen's home property violated Mr. Mullen's rights under the U.S. and Colorado Constitutions.

90. Defendants' warrantless entry into Mr. Mullen's home property proximately caused substantial harm to Mr. Mullen, including physical and mental injuries and the institution of false criminal charges, which caused Mr. Mullen further damages.

### Second Cause of Action
**Excessive Force in Violation of Article II, Section 7 of the Colorado Constitution brought under C.R.S. § 13-21-131 Against Defendant Gates;**
**Excessive Force in Violation of the Fourth Amendment of the U.S. Constitution brought under 42 U.S.C. § 1983 against the John Doe Defendants**

91. Mr. Mullen incorporates all other paragraphs of this Complaint herein.

92. Defendants subjected Mr. Mullen to force which, judged from the perspective of a reasonable officer on the scene, was unreasonable. This violated Mr. Mullen's rights under the U.S. and Colorado Constitutions.

93. Mr. Mullen had committed no crime, posed no threat to any officers, had engaged in no physical resistance, and had taken no action that could even be interpreted as evading arrest.

94. Defendants' acts of wrestling Mr. Mullen face first onto the ground, aggressively forcing his arms behind his back, injuring his back, and causing lacerations on Mr. Mullen's arm and torso in order to effectuate an illegal arrest constituted excessive force.

95. Defendants' actions proximately caused Mr. Mullen physical and mental injuries and were also a proximate cause of the Defendants' decision to initiate false criminal charges against Mr. Mullen, which caused Mr. Mullen further damages.

## Third Cause of Action

**Unconstitutional Seizure in Violation of Article II, Section 7 of the Colorado Constitution brought under C.R.S. § 13-21-131 Against Defendant Gates;**
**Unconstitutional Seizure in Violation of the Fourth Amendment of the U.S. Constitution brought under 42 U.S.C. § 1983 against the Doe Defendants**

96. Mr. Mullen incorporates all other paragraphs of this Complaint herein.

97. Defendants illegally seized Mr. Mullen's person and detained him, without any lawful justification. Defendants then illegally jailed Mr. Mullen, authored falsified reports, and initiated illegitimate criminal proceedings against Mr. Mullen.

98. The Defendants had no legal right to seize, detain, or arrest Mr. Mullen. This violated Mr. Mullen's rights under the U.S. and Colorado Constitutions.

99. Defendants' actions proximately caused Mr. Mullen physical and mental injuries and were also a proximate cause of the Defendants' decision to initiate false criminal charges against Mr. Mullen, which caused Mr. Mullen further damages.

## Fourth Cause of Action

**Governmental Entity Liability for Fourth Amendment Violations brought under 42 U.S.C. § 1983 and *Monell* against the Local Government Defendants**

100. Mr. Mullen incorporates all other paragraphs of this Complaint herein.

101. Defendants' actual customs, policies, practices, and Defendants' training and supervision failures concerning the enforcement of local fire regulations and restrictions were a

proximate cause of the Fourth Amendment violations Mr. Mullen suffered, detailed in the above causes of action, which caused substantial harm to Mr. Mullen.

102. Defendant Gates' actions detailed herein violated Mr. Mullen's federal constitutional rights in the same manner they violated Mr. Mullen's state constitutional rights. Though Mr. Mullen only brings causes of action against Defendant Gates as an individual defendant for his violations of Mr. Mullen's state constitutional rights, Defendant Gates' actions equally violated Mr. Mullen's federal constitutional rights guaranteed by the Fourth Amendment. The Local Government Defendants' actual customs, policies, practices, and training and supervision failures proximately caused Deputy Gates' violations of Mr. Mullen's Fourth Amendment rights.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Mullen respectfully requests that this Court enter judgment in his favor against Defendants, and award him all relief as allowed by law, including but not limited to the following:

a. Appropriate relief at law and equity;

b. Declaratory relief, injunctive relief, and other appropriate equitable relief;

c. Compensatory and punitive damages on all claims allowed by law in an amount to be determined at trial;

d. Relief in the nature of mandamus;

e. Attorneys' fees and the costs associated with this action on all claims pursuant to C.R.S. § 13-21-121 and 42 U.S.C. §1988 and all applicable law;

f. Pre- and post-judgment interest at the appropriate lawful rate;

g. Any further relief that this Court deems just and proper, and any other relief as allowed by law.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIALABLE**

Dated: August 6, 2026

*s/William Fairhurst*
William Fairhurst
Adam Frank
Frank Law Office LLC
1133 N Pennsylvania St
Denver, CO 80203
Telephone: (303) 800-8222
Fax: (303) 800-9122
will@franklawoffice.com
adam@franklawoffice.com
*Attorneys for Plaintiff*